FILED _____ ENTERED
LODGED _____ RECEIVED

JUL – 1 2004   DJ

AT SEATTLE
CLERK U.S. DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
BY _____ DEPUTY

04-CV-01510-CMP

# UNITED STATES DISTRICT COURT

## WESTERN DISTRICT OF WASHINGTON

### AT SEATTLE

| | |
|---|---|
| RANDALL SIMON, On Behalf of Himself and all Others Similarly Situated,<br><br>Plaintiff,<br><br>vs.<br><br>DRUGSTORE.COM, INC., KAL RAMAN, ROBERT A. BARTON and SRIDHAR IYER,<br><br>Defendants. | No. CV4 1510 C<br><br>CLASS ACTION<br><br>COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS<br><br><br>DEMAND FOR JURY TRIAL |

316650 N / 155

COMPLAINT FOR VIOLATION OF THE
FEDERAL SECURITIES LAWS

LERACH COUGHLIN STOIA & ROBBINS LLP
700 Fifth Avenue, Suite 5600
Seattle, WA 98104
Telephone: 206-749-5544 Fax: 206-749-9978

**SUMMARY AND OVERVIEW**

1.   This is a securities class action on behalf of all purchasers of the publicly traded securities of drugstore.com inc.("drugstore.com" or the "Company") between January 14, 2004 and June 10, 2004 (the "Class Period"), against drugstore.com and certain of its officers and directors for violations of the Securities Exchange Act of 1934 (the "1934 Act").

2.   drugstore.com is an online provider of health, beauty, wellness, personal care, vision and pharmacy solutions.

3.   During the Class Period, defendants issued materially false and misleading statements regarding the Company's business and prospects, causing drugstore.com securities to trade at artificially inflated levels.

4.   The true facts which were known by each of the defendants, but concealed from the investing public during the Class Period, were as follows:

   (a)   the Company's gross margins were being negatively impacted due to its implementation of a free 3-day shipping promotion;

   (b)   the integration of Vision Direct was eroding the Company's margins;

   (c)   the Company's sales growth was being negatively impacted by cancellations resulting from expired prescriptions;

   (d)   the Company was not on track to "break even" but rather incur massive losses; and

   (e)   as a result of the foregoing, defendants lacked a reasonable basis for their positive statements about the Company and its earnings projections.

5.   As a result of the defendants' false statements, drugstore.com shares traded at inflated prices during the Class Period, increasing to as high as $7.91 on January 21, 2004, and the Company's top officers and directors sold more than $4.7 million worth of their own shares.

COMPLAINT FOR VIOLATION OF THE
FEDERAL SECURITIES LAWS

LERACH COUGHLIN STOIA & ROBBINS LLP
700 Fifth Avenue, Suite 5600
Seattle, WA 98104
Telephone: 206-749-5544 • Fax: 206-749-9978

- 1 -

## JURISDICTION AND VENUE

6.  Jurisdiction is conferred by §27 of the 1934 Act.  The claims asserted herein arise under §§10(b) and 20(a) of the 1934 Act and Rule 10b-5.

7.  Venue is proper in this District pursuant to §27 of the 1934 Act.  Many of the false and misleading statements were made in or issued from this District.

8.  The Company's principal executive offices are in Bellevue, Washington, where the day-to-day operations of the Company are directed and managed.

## THE PARTIES

9.  Plaintiff Randall Simon purchased drugstore.com publicly traded securities as described in the attached certification and was damaged thereby.

10.  Defendant drugstore.com is an online provider of health, beauty, wellness, personal care, vision and pharmacy solutions.

11.  Defendant Kal Raman ("Raman") was the President and Chief Executive Officer of drugstore.com until his resignation was announced on June 11, 2004.  During the Class Period, Raman sold more than $3.25 million worth (or 90%) of his drugstore.com stock.

12.  Defendant Robert A. Barton ("Barton") was the Vice President, Finance and Chief Financial Officer of drugstore.com.  During the Class Period, Barton sold more than $1.2 million worth of his drugstore.com stock.

13.  Defendant Sridhar Iyer ("Iyer") was the Vice President, Technology and Chief Information Officer of drugstore.com.  During the Class Period, Iyer sold more than $306,000 worth of his drugstore.com shares.

14.  The individuals named as defendants in ¶¶11-13 are referred to herein as the "Individual Defendants."  The Individual Defendants, because of their positions with the Company, possessed the power and authority to control the contents of drugstore.com's quarterly reports, press releases and presentations to securities analysts, money and portfolio managers and institutional investors, i.e., the market.  Each defendant was provided with copies of the Company's reports and

COMPLAINT FOR VIOLATION OF THE
FEDERAL SECURITIES LAWS

LERACH COUGHLIN STOIA & ROBBINS LLP
700 Fifth Avenue, Suite 5600
Seattle, WA 98104
Telephone: 206-749-5544 • Fax: 206-749-9978

- 2 -

1   press releases alleged herein to be misleading prior to or shortly after their issuance and had the

2   ability and opportunity to prevent their issuance or cause them to be corrected.  Because of their

3   positions and access to material non-public information available to them but not to the public, each

4   of these defendants knew that the adverse facts specified herein had not been disclosed to and were

5   being concealed from the public and that the positive representations which were being made were

6   then materially false and misleading.  The Individual Defendants are liable for the false statements

7   pleaded herein at ¶¶17, 19-20 and 25-27, as those statements were each "group-published"

8   information, the result of the collective actions of the Individual Defendants.

9                                      **SCIENTER**

10          15.    In addition to the above-described involvement, each Individual Defendant had

11   knowledge of drugstore.com's problems and was motivated to conceal such problems.  Barton, as

12   CFO, was responsible for financial reporting and communications with the market.  Many of the

13   internal reports showing drugstore.com's forecasted and actual growth were prepared by the finance

14   department under Barton's direction.  Defendants Raman, as CEO and President, and Iyer, as Chief

15   Information Officer, were responsible for the financial results and press releases issued by the

16   Company.  Each Individual Defendant sought to demonstrate that he could lead the Company

17   successfully and generate the growth expected by the market.

18                    **FRAUDULENT SCHEME AND COURSE OF BUSINESS**

19          16.    Each defendant is liable for (i) making false statements, *or* (ii) failing to disclose

20   adverse facts known to him about drugstore.com.  Defendants' fraudulent scheme and course of

21   business that operated as a fraud or deceit on purchasers of drugstore.com publicly traded securities

22   was a success, as it (i) deceived the investing public regarding drugstore.com's prospects and

23   business; (ii) artificially inflated the prices of drugstore.com's publicly traded securities; (iii) allowed

24   defendants to obtain larger bonuses which were directly tied to the performance of drugstore.com

25   shares; (iv) allowed defendants to arrange to sell and actually sell in excess of $4.7 million worth of

26

COMPLAINT FOR VIOLATION OF THE
FEDERAL SECURITIES LAWS

LERACH COUGHLIN STOIA & ROBBINS LLP
700 Fifth Avenue, Suite 5600
Seattle, WA 98104
Telephone: 206-749-5544 • Fax: 206-749-9978

- 3 -

1    drugstore.com shares at artificially inflated prices; and (v) caused plaintiff and other members of the

2    Class to purchase drugstore.com publicly traded securities at inflated prices.

3    **DEFENDANTS' FALSE AND MISLEADING<br/>STATEMENTS ISSUED DURING THE CLASS PERIOD**

4

5    17.    On January 14, 2004, drugstore.com issued a press release entitled "drugstore.com

inc. Announces Preliminary Financial Results for the Fourth Quarter of Fiscal Year 2003; Company

6

7    Anticipates 4Q03 Revenue Increase of 28% over 4Q02 and Indicates Key Profitability Milestone

Achieved." The press release stated in part:

8

9         drugstore.com, inc., the leading online retailer of health, beauty, wellness, personal
care, and pharmacy products, in connection with its upcoming presentation at the 2nd

10        Annual SG Cowen Consumer Conference in New York, today announced
preliminary financial results for the quarter ended December 28, 2003.

11        ***drugstore.com, inc. announced that it expects record revenues reflecting a
28% increase over revenues for the fourth quarter of fiscal year 2002, or***

12        ***approximately $70.0 million in revenues for the fourth quarter of fiscal year 2003.***
The company also expects to report profitability on an EBITDA basis for the further

13        quarter of fiscal year 2003. EBITDA is a non-GAAP financial measure defined as
earnings before interest, taxes, depreciation and amortization of intangible assets,

14        non-cash marketing expense and stock-based compensation. A schedule of the
expected range of estimated amounts to be used in reconciling expected net loss (the

15        most directly comparable GAAP measure) to expected EBITDA profitability is
provided supplementally below. In addition, drugstore.com, inc. expects to end

16        fiscal year 2003 with more than $40 million in cash and cash equivalents. These
preliminary results are subject to revision upon completion of an audit of the full

17        year's results by the company's outside auditors.

18        "In a very tough economy, we have been a high-growth retailer that has
consistently outperformed the competition," said Kal Raman, president and chief

19        executive officer of drugstore.com, inc. "***As a result of our relentless focus on***

20        ***convenience, selection, value and most importantly, trust, we are now well-
positioned to capitalize on the incredible growth opportunities in the $273 billion***

       ***health, beauty, wellness, and pharmacy market.***"

21

22    18.    On January 20, 2004, the Company issued a press release reporting record net sales of

$70.6 million for the quarter and a 59% year-over-year reduction in GAAP net loss and announced

23

24    that it achieved EBITDA profitability.

25    19.    Commenting on the January 20, 2004 press release, defendant Raman stated:

26        "The fourth quarter was an important milestone for drugstore.com, as we
accomplished significant operational goals, including record sales, higher gross
margins, and most importantly EBITDA profitability .... We also made significant

COMPLAINT FOR VIOLATION OF THE<br/>FEDERAL SECURITIES LAWS

LERACH COUGHLIN STOIA & ROBBINS LLP<br/>700 Fifth Avenue, Suite 5600<br/>Seattle, WA 98104<br/>Telephone: 206-749-5544 • Fax: 206-749-9978

- 4 -

investments for the future, such as broadening our product mix by acquiring a leading online contact lens provider, launching new technology that makes it easier for customers to use their flexible spending accounts, and leading the effort to make the Internet safer for consumers shopping for online prescriptions. With these and other growth initiatives, we believe we can continue to grow the company profitably and build on our position as the leading provider of health, beauty, wellness, personal care and pharmacy solutions on the Web."

20.     The press release also included the Company's outlook for first quarter 2004 and fiscal year 2004:

drugstore.com, inc. anticipates net sales for fiscal year 2004 to grow in excess of 45% over 2003, and be in the range of $360 million to $390 million. Of net sales, the company expects pharmacy mail order sales to be approximately 16%, local pickup pharmacy sales to be approximately 24%, eye care sales to be approximately 20%, and OTC sales to be approximately 40%. For fiscal year 2004, the company expects GAAP net loss in the range of $9.5 million to $13.5 million and EBITDA in the range of break-even to $4 million. For the first quarter of fiscal year 2004, the company expects net sales to be approximately $80 million to $85 million, with mail order pharmacy sales at approximately 17% of net sales, local pickup pharmacy sales at approximately 28%, eye care at approximately 15%, and OTC sales at approximately 40%. Gross margin in the first quarter of 2004 is expected to be in the range of 21% to 22%. The company anticipates a GAAP net loss range of $4.5 million to $5.0 million and an EBITDA loss range of $1.2 million to $1.7 million for the first quarter, as the company anticipates increased marketing spending in the first quarter to drive additional growth into the newly acquired Vision Direct and the company's other base businesses.

21.     The Company's shares spiked 13%, or $.94, from $6.97 to close at $7.91 on a trading volume of 1.8 million shares.

22.     From January 26, 2004 to March 30, 2004, defendant Barton sold 200,000 shares of his drugstore.com stock for proceeds of $306,100.

23.     From January 26, 2004 to April 18, 2004, defendant Raman sold 551,300 shares of his drugstore.com stock for proceeds of $3.2 million.

24.     From February 6, 2004 to February 12, 2004, defendant Iyer sold 40,000 shares of his drugstore.com stock for proceeds of $262,000.

25.     On April 28, 2004, drugstore.com announced its first quarter 2004 results. The Company provided a list of 15 highlights for the quarter, each of which painted a very promising picture:

COMPLAINT FOR VIOLATION OF THE
FEDERAL SECURITIES LAWS

- 5 -

LERACH COUGHLIN STOIA & ROBBINS LLP
700 Fifth Avenue, Suite 5600
Seattle, WA 98104
Telephone: 206-749-5544 • Fax: 206-749-9978

- Net sales grew by 48% to $84.4 million.  Sales in the OTC segment grew by 48% to $35.5 million, mail-order pharmacy sales grew by 24% to $14.5 million, local pick-up pharmacy sales were flat at $21.5 million, and sales in the vision segment (created in December 2003 as a result of the acquisition of International Vision Direct Corp.) were $12.9 million.

- Average net sales per order increased by 10%, or $7, to $78.  Average net sales per order grew by 20% to $60 for OTC, by 16% to $129 for mail-order pharmacy, and by 10% to $101 for local pick-up pharmacy.  Average net sales per order for the vision segment were $77.

- Order volume during the quarter exceeded 1 million orders, and grew by 33%.

- The trailing 12-month number of active consumers grew by 21% to 1.57 million.  The average annual spend per active customer was $174, up from $160.  During the quarter, the company revised its trailing 12-month average spend for Vision Direct customers to approximately $110.

- Sales from repeat customers grew by 45% for the quarter, with revenue from repeat customers representing 73% of total sales.  Net sales from repeat customers grew by 46% in OTC, by 21% in mail-order pharmacy, and by 14% in the local pick-up pharmacy.  In the vision segment, 56% of sales were generated from repeat customers.

- During the quarter, the Company added 306,000 new customers, bringing the total customer base to over 5.1 million unique customers since inception.

- First quarter gross margin was 21.5%, up from 18.4%, and was benefited by high growth in the OTC product sales and the addition of the vision segment.

- As expected, marketing and sales expense per new customer for the first quarter was $20, up $3 from the fourth quarter of 2003, reflecting the assumption and integration of Vision Direct marketing efforts.

- Fulfillment and order processing expenses declined as a percent of sales to 11.0%, down from 12.5%.

- Net loss on a GAAP basis for the first quarter was $4.6 million, or $0.06 per share, and improved by 19%, or $1.1 million.

- EBITDA loss (as previously defined) was $961,000 for the first quarter of 2004.

- The Company reduced its accrued liability associated with employee vacation by approximately $400,000 and realized a corresponding benefit to the first quarter's net loss and EBITDA loss, as a result of a new employee vacation policy implemented in the first quarter.

- The Company capitalized labor of approximately $200,000 associated with technology integration of the Vision Direct Web store and back-end operations.

COMPLAINT FOR VIOLATION OF THE
FEDERAL SECURITIES LAWS

LERACH COUGHLIN STOIA & ROBBINS LLP
700 Fifth Avenue, Suite 5600
Seattle, WA 98104
Telephone: 206-749-5544 • Fax: 206-749-9978

- Employee headcount at the end of the quarter was approximately 600 employees.

- Annualized inventory for the first quarter was approximately 600 employees.

26.   Again commenting on the quarter's results, defendant Raman stated:

"The first quarter of 2004 was an exciting quarter for us, as we began to see a significant return from our growth initiatives.   This was demonstrated by an impressive 46% year-over-year growth in revenue from repeat customers in our over-the-counter business, which shows that our customers are getting more from and are doing more of their shopping at the drugstore.com Web store ...."

27.   The April 28, 2004 release also provided guidance for the second quarter 2004 and full fiscal year 2004:

For the second quarter of fiscal 2004, drugstore.com, inc. expects net sales to be in the range of $85 million to $89 million.  Of total net sales, the company expects OTC sales to be in the range of $36 million to $38 million, mail-order pharmacy sales to be in the range of $15 million to $16 million, local pick-up pharmacy to be in the range of $21 million to $22 million, and vision to be approximately $13 million. The company plans to implement a new Free 3-Day Shipping service for OTC orders of $49 or more, which is expected to benefit West Coast customers in particular, and also plans to increase spending on marketing to promote its newly acquired vision business and the Free 3-Day Shipping service.  As a result, the company anticipates a GAAP net loss for the second quarter to be in the range of $4.0 million to $4.5 million, and EBITDA loss to be in the range of $600,000 to $1.1 million.

For the full fiscal year, drugstore.com, inc. confirmed its prior guidance that net sales are expected to grow more than 45% over 2003, to a range of $360 million to $390 million.  The company adjusted its forecast of GAAP net loss for the full fiscal year slightly, to a range of $9.8 million to $13.8 million.  The company maintained its prior EBITDA guidance for fiscal year 2004, with EBITDA in the range of break-even to a profit of $4.0 million, and believes that it will end the year with more than $40 million in cash.  A reconciliation of forecasted net loss range to forecasted EBITDA range (net loss is the most directly comparable GAAP measure) is included in the financial data accompanying this press release.

28.   On May 17, 2004, defendant Iyer sold 10,000 shares of his drugstore.com stock for proceeds of $44,100.

29.   On June 11, 2004, before the markets opened, CEO Raman shocked investors with his immediate resignation "to pursue other opportunities."  Simultaneously with the press release announcing Raman's resignation, the Company, less than 45 days after issuance of positive guidance on April 28, 2004, issued another release lowering its expected revenue for the second quarter 2004 and fiscal year 2004:

COMPLAINT FOR VIOLATION OF THE
FEDERAL SECURITIES LAWS

LERACH COUGHLIN STOIA & ROBBINS LLP
700 Fifth Avenue, Suite 5600
Seattle, WA 98104
Telephone: 206-749-5544 • Fax: 206-749-9978

- 7 -

For the second quarter of 2004, drugstore.com currently expects revenues to increase by approximately 50 percent year-over-year, in line with previous guidance of $85 to $89 million, with a GAAP net loss of approximately $4.5 million to $5.2 million. The company expects to report an EBITDA loss (a non-GAAP financial measure defined as earnings before interest, taxes, depreciation and amortization of intangible assets, non-cash marketing expense and stock-based compensation) of $1.1 to $1.8 million for the second quarter. This would represent a significant improvement over an EBITDA loss of $2.1 million reported for the same period last year, but is below previous guidance of an EBITDA loss of $600,000 to $1.1 million.

"We expect our second quarter results to be impacted by a dip in gross margins to approximately 20.3 percent ...."

... For fiscal year 2004, the company adjusted its previous forecast of GAAP net loss to a range of $15.8 million to $17.8 million and adjusted its prior EBITDA guidance to an EBITDA loss in the range of $2.0 to $4.0 million.

30.     Immediately following the Company's release, drugstore.com's stock plunged from its closing price of $4.91 on June 10, 2004 to a closing price of $3.06 on June 14, 2004, on volume of 3.8 million shares.

31.     Whitaker Securities LLC senior analyst Marc Bettinger, who was surprised by the announcement, stated:

"The company's dramatic announcement that its 2004 sales would be lower, EBITDA would swing $5 million (from midpoint to midpoint) to negative territory and that its CEO was resigning does little to inspire confidence in the story ...."

32.     Bettinger also found "Mr. Raman's stepping down and timing of such disquieting." Whitaker downgraded drugstore.com stock to "under perform" from "market perform."

33.     The façade of growing strength in the Company's operations, which artificially inflated the value of drugstore.com stock, occurred at just the perfect time for defendants to sell millions of dollars worth of drugstore.com stock.

34.     The true facts which were known by each of the defendants, but concealed from the investing public during the Class Period, were as follows:

(a)     the Company's gross margins were being negatively impacted due to its implementation of a free 3-day shipping promotion;

(b)     the integration of Vision Direct was eroding the Company's margins;

COMPLAINT FOR VIOLATION OF THE
FEDERAL SECURITIES LAWS

- 8 -

LERACH COUGHLIN STOIA & ROBBINS LLP
700 Fifth Avenue, Suite 5600
Seattle, WA 98104
Telephone: 206-749-5544 • Fax: 206-749-9978

1    (c)    the Company's sales growth was being negatively impacted by cancellations
2  resulting from expired prescriptions;

3    (d)    the Company was not on track to "break even" but rather incur massive losses;
4  and

5    (e)    as a result of the foregoing, defendants lacked a reasonable basis for their
6  positive statements about the Company and its earnings projections.

7                          **FIRST CLAIM FOR RELIEF**

8                      **For Violation of §10(b) of the 1934 Act**
                       **and Rule 10b-5 Against All Defendants**
9
10    35.    Plaintiff incorporates ¶¶1-34 by reference.

11    36.    During the Class Period, defendants disseminated or approved the false statements
12  specified above, which they knew or deliberately disregarded were misleading in that they contained
13  misrepresentations and failed to disclose material facts necessary in order to make the statements
14  made, in light of the circumstances under which they were made, not misleading.

15    37.    Defendants violated §10(b) of the 1934 Act and Rule 10b-5 in that they:

16    (a)    Employed devices, schemes, and artifices to defraud;

17    (b)    Made untrue statements of material facts or omitted to state material facts
18  necessary in order to make the statements made, in light of the circumstances under which they were
19  made, not misleading; or

20    (c)    Engaged in acts, practices, and a course of business that operated as a fraud or
21  deceit upon plaintiff and others similarly situated in connection with their purchases of
22  drugstore.com publicly traded securities during the Class Period.

23    38.    Plaintiff and the Class have suffered damages in that, in reliance on the integrity of
24  the market, they paid artificially inflated prices for drugstore.com publicly traded securities.
25  Plaintiff and the Class would not have purchased drugstore.com publicly traded securities at the
26  prices they paid, or at all, if they had been aware that the market prices had been artificially and
    falsely inflated by defendants' misleading statements.

COMPLAINT FOR VIOLATION OF THE
FEDERAL SECURITIES LAWS

LERACH COUGHLIN STOIA & ROBBINS LLP
700 Fifth Avenue, Suite 5600
Seattle, WA 98104
Telephone: 206-749-5544 • Fax: 206-749-9978

- 9 -

39.     As a direct and proximate result of these defendants' wrongful conduct, plaintiff and the other members of the Class suffered damages in connection with their purchases of drugstore.com publicly traded securities during the Class Period.

### SECOND CLAIM FOR RELIEF

#### For Violation of §20(a) of the 1934 Act
#### Against All Defendants

40.     Plaintiff incorporates ¶¶1-39 by reference.

41.     The Individual Defendants acted as controlling persons of drugstore.com within the meaning of §20(a) of the 1934 Act.  By reason of their positions as officers and/or directors of drugstore.com, and their ownership of drugstore.com stock, the Individual Defendants had the power and authority to cause drugstore.com to engage in the wrongful conduct complained of herein. drugstore.com controlled each of the Individual Defendants and all of its employees.  By reason of such conduct, the Individual Defendants and drugstore.com are liable pursuant to §20(a) of the 1934 Act.

### CLASS ACTION ALLEGATIONS

42.     Plaintiff brings this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of all persons who purchased drugstore.com publicly traded securities (the "Class") on the open market during the Class Period.  Excluded from the Class are defendants.

43.     The members of the Class are so numerous that joinder of all members is impracticable.  The disposition of their claims in a class action will provide substantial benefits to the parties and the Court.  Drugstore.com had more than 78 million shares of stock outstanding, owned by hundreds if not thousands of persons.

44.     There is a well-defined community of interest in the questions of law and fact involved in this case.  Questions of law and fact common to the members of the Class which predominate over questions which may affect individual Class members include:

(a)     Whether the 1934 Act was violated by defendants;

(b)     Whether defendants omitted and/or misrepresented material facts;

COMPLAINT FOR VIOLATION OF THE
FEDERAL SECURITIES LAWS

- 10 -

LERACH COUGHLIN STOIA & ROBBINS LLP
700 Fifth Avenue, Suite 5600
Seattle, WA 98104
Telephone: 206-749-5544 • Fax: 206-749-9978

1    (c)    Whether defendants' statements omitted material facts necessary to make the
2  statements made, in light of the circumstances under which they were made, not misleading;

3    (d)    Whether defendants knew or deliberately disregarded that their statements
4  were false and misleading;

5    (e)    Whether the prices of drugstore.com's publicly traded securities were
6  artificially inflated; and

7    (f)    The extent of damage sustained by Class members and the appropriate
8  measure of damages.

9  45.    Plaintiff's claims are typical of those of the Class because plaintiff and the Class
10  sustained damages from defendants' wrongful conduct.

11  46.    Plaintiff will adequately protect the interests of the Class and has retained counsel
12  who are experienced in class action securities litigation.  Plaintiff has no interests which conflict
13  with those of the Class.

14  47.    A class action is superior to other available methods for the fair and efficient
15  adjudication of this controversy.

16                          **PRAYER FOR RELIEF**

17  WHEREFORE, plaintiff prays for judgment as follows:

18  A.    Declaring this action to be a proper class action pursuant to FRCP 23;

19  B.    Awarding plaintiff and the members of the Class damages, interest and costs;

20  C.    Awarding reasonable costs, including attorneys' fees; and

21  D.    Awarding such equitable/injunctive or other relief as the Court may deem just and
22  proper.

23                          *JURY DEMAND*

24  Plaintiff demands a trial by jury.

25

26

COMPLAINT FOR VIOLATION OF THE
FEDERAL SECURITIES LAWS

LERACH COUGHLIN STOIA & ROBBINS LLP
700 Fifth Avenue, Suite 5600
Seattle, WA 98104
Telephone: 206-749-5544 • Fax: 206-749-9978

- 11 -

DATED: July 1, 2004

LERACH COUGHLIN STOIA
& ROBBINS LLP
TAMARA J. DRISCOLL, WSBA #29212

TAMARA J. DRISCOLL

700 Fifth Avenue, Suite 5600
Seattle, WA 98104
Telephone: 206/749-5544
206/749-9978 (fax)

LERACH COUGHLIN STOIA
& ROBBINS LLP
WILLIAM S. LERACH
DARREN J. ROBBINS
401 B Street, Suite 1700
San Diego, CA 92101
Telephone: 619/231-1058
619/231-7423 (fax)

GELLER RUDMAN, PLLC
SAMUEL H. RUDMAN
DAVID A. ROSENFELD
200 Broadhollow Road, Suite 406
Melville, NY 11747
Telephone: 631/367-7100
631/367-1173 (fax)

Attorneys for Plaintiff

C:\Word\drugstore_com cpt.doc

COMPLAINT FOR VIOLATION OF THE
FEDERAL SECURITIES LAWS

LERACH COUGHLIN STOIA & ROBBINS LLP
700 Fifth Avenue, Suite 5600
Seattle, WA 98104
Telephone: 206-749-5544 • Fax: 206-749-9978

- 12 -